**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MOTOROLA MOBILITY, INC., and GENERAL INSTRUMENT CORPORATION, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| MICROSOFT CORPORATION, | ) ) |
| Defendant. | ) |

Civil Action No.      10-cv-699

District Judge William M. Conley

Magistrate Judge Stephen L. Crocker

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS, STAY OR, IN THE ALTERNATIVE, TRANSFER VENUE

The Court should dismiss or transfer Motorola's patent infringement action because its infringement claims are compulsory counterclaims in Microsoft's pending suit against Motorola in the Western District of Washington. The prior-filed Washington suit involves facts and legal disputes that are central to and would require resolution before Motorola could receive any relief in this case. In any event, even if plaintiffs' claims were not compulsory counterclaims such that this case should be dismissed or stayed, the Court should in the alternative transfer this case to the Western District of Washington pursuant to 28 U.S.C. § 1404, because the Western District of Washington hosts a first-filed action involving the same underlying facts and subject matter and also is a more convenient venue.

## I.      BACKGROUND FACTS

On November 9, 2010, Microsoft sued Motorola in the Western District of Washington alleging breach of contract, promissory estoppel, and waiver (the "Washington action"). The Washington action relates to Motorola's promises to standards-setting organizations to offer

licenses to the patents asserted here (and many others) at reasonable royalty rates, with reasonable terms and under non-discriminatory conditions.  Complaint, d/e 1 at 1-2.  Despite such promises, Motorola demanded of Microsoft excessive and discriminatory royalties based on products as to which the accused technology forms but a minor, and often optional, portion of the product functionality.  *See*, October 29, 2010 Letter from Motorola regarding H.264 patent license, Exhibit 1 to Cederoth Declaration filed herewith.  Microsoft's Washington case seeks, *inter alia*, relief declaring Motorola to be in breach of its binding promises and further limiting damages for any use of its patents, if any, that Microsoft's (or its suppliers') compliance with the related standards might have caused.

On November 10, 2010, Plaintiffs filed this suit against Microsoft (the "Wisconsin action"), alleging patent infringement.  Plaintiffs allege that Microsoft's Windows 7 product infringes patents that Motorola claims relate to H.264 technology, specifically, U.S. Patent Nos. 7,310,374 (the "'374 patent"), 7,310,375 (the "'375 patent"), and  7,310,376 (the "'376 patent").[1] H.264 technology is a now-accepted industry standard for video compression, which is used in applications such as digital television, mobile TV, video conferencing, and Internet video streaming.  The patents-in-suit all facially relate to methods and systems of encoding and decoding digital video content.[2]  Indeed, each of these patents expressly states that it relates to the "H.264 standard."  (*See*, *e.g.* '374 patent, col. 1, lines 19-20, d/e 1, Exhibit 1).

Defendant Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business in Redmond, Washington, where it has been headquartered since

---

[1] Plaintiffs currently have a related suit pending against Microsoft in the Western District of Wisconsin, captioned 10-cv-700.  The 700 suit alleges that Microsoft's Xbox 360 system infringes certain Motorola patents.  Microsoft has also moved to dismiss, or in the alternative, transfer the 700 case to the Western District of Washington.

[2] The patents are titled "Macroblock Level Adaptive Frame/Field Coding for Digital Video Content."  *See*, d/e 1 Exhibits 1-3.

1979.  Microsoft's Window 7 products were developed in Redmond, Washington, where all key decisions regarding marketing and product direction are made and all witnesses with knowledge of the relevant facts are located.  *See generally*, Declaration of Erich Andersen, filed herewith.  Microsoft is not currently aware of any employees located in Wisconsin who would have relevant knowledge regarding this dispute, nor is Microsoft aware of any documents relevant to this litigation that are maintained in Wisconsin.  *See generally*, Andersen Decl..

Plaintiff Motorola Mobility, Inc. ("Motorola") is a Delaware corporation with its principal place of business in Libertyville, Illinois.  Plaintiff General Instrument Corporation ("General Instrument") is also a Delaware corporation, with its principal place of business in Horsham, Pennsylvania.  General Instrument is wholly owned by Motorola and is the nominal owner of the patents-in-suit.  Although both Motorola and General Instrument are plaintiffs in the Wisconsin action, Motorola, not General Instrument, sent Microsoft a letter demanding royalties on the patents General Instrument purports to own, describing the patents as part of "Motorola's portfolio of patents," and not mentioning General Instrument.  *See*, Cederoth Ex. 1.[3]

Microsoft is also not aware of any third-party witnesses who are located in Wisconsin.  None of the named inventors of the patents-in-suit are listed on the patents as residents of Wisconsin.  Moreover, Motorola approached Microsoft in Washington to assert licensing demands under the patents asserted here on H.264 technology, and it is Motorola's conduct in those licensing efforts that is the subject of the Washington action.

---

[3] Consequently, even though only Motorola is a defendant in the Washington action, this motion will treat the plaintiffs and Motorola as one.

**II.     Because Motorola's Patent Infringement Claims Are Compulsory Counterclaims in the Washington Action, They Should Be Dismissed or Alternatively, Stayed in This Later Filed Action.**

**A.     Motorola's Patent Infringement Claims Are Compulsory Counterclaims In the Washington Action.**

Motorola's Wisconsin action alleges counts that are compulsory counterclaims to Microsoft's claims in the Washington action.  A counterclaim is compulsory when it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a).  Rule 13(a) seeks to "prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Washawsky*, 552 F.2d at 1261; *Harley-Davidson Motor Co. v. Chrome Specialists, Inc.*, 173 F.R.D. 250, 252 (E.D. Wis. 1997).  The Seventh Circuit considers an action to "arise[] out of the same transaction or occurrence" if there is a logical relationship between the actions.  *Washawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977); *Wilde v. Beneficial International, Inc.*, 2007 WL 2053458 at *3 (E.D. Wis. Jul. 16, 2007).  According to the Seventh Circuit, courts should interpret the words "transaction or occurrence" liberally in order to avoid the unnecessary expense inherent in multiplicity of litigation.  *Washawsky*, 552 F.2d at 1261; *Harley-Davidson Motor Co. v. Chrome Specialists, Inc.*, 173 F.R.D. 250, 252 (E.D. Wis. 1997).

Plaintiffs' patent infringement claims are logically related to the claims pending in the Washington action as the patents asserted here against Microsoft's Windows 7 product are some of the same patents that Motorola asserts to be related to H.264 standards.  Moreover, the actions are inextricably intertwined.  Motorola specifically identified all of the patents asserted in this case in its H.264-related licensing demands directed to Microsoft, which form the basis for the Washington action.

And, in Washington, Microsoft's complaint seeks, because of Motorola's conduct and prior representations to the standards-setting bodies, to limit *any* relief under Motorola's patents (i.e., damages, if any, and/or injunction) that Motorola can be awarded. .  Here, Motorola seeks patent infringement damages and injunctive relief on some of the patents at issue in Washington. Resolving the parties' respective claims in the Washington and Wisconsin actions, necessarily requires deciding at least some of the same core issues using the same evidence – e.g., whether and to what extent any potential patent damages claims are limited by Motorola's prior representations to the standards-setting bodies.  Indeed, keeping these actions separate risks inconsistent rulings on the same fundamental issues.  *Avante Intern. Technology, Inc. v. Hart Intercivic, Inc.*, No. 08-636-GPM, 2009 WL 2448519 *5 (S.D.Ill. July 22, 2009)("[T]here is great risk that consideration of the same patent by two separate federal courts will create inconsistent results"); *Admiral Corp. v. Columbia Broadcasting System, Inc.*, No 68-c-578,1969 WL 9568, 3 (N.D.Ill. Feb. 14,1969)([T]he possibility of inconsistent results [should] be avoided whenever possible.... The administration of justice will be needlessly complicated if the court first concluding its proceedings in these matters is called upon to reconsider its decision on account of arguments or evidence presented by other parties in related cases heard elsewhere"). Nor does it matter that the Wisconsin action may involve more issues (*e.g.*, infringement in addition to damages) than the Washington action so long as "core facts are common and material to both actions."  *Harley-Davidson*, 173 F.R.D. at 252.  The limitation on any potential Motorola recovery on its patent claims represents just such an indisputably material fact.

If this action is allowed to continue, Microsoft's defenses would involve the same facts and legal theories that underlie the Washington action.  Courts routinely have found breach of contract claims like those in the Washington action to be compulsory counterclaims to a patent

infringement action.  *See, e.g., Fit Express, Inc. v. Circuit-Total Fitness*, 2008 WL 4450290 (N.D. Miss. Sept. 29, 2008) (holding that breach of contract, fraud, and misrepresentation claims were compulsory counterclaims to patent infringement suit because both suits centered on the validity of the same patent assignment issues); *Artvale, Inc. v. Rugby Fabrics Corp.*, 232 F.Supp. 814, 821 (S.D.N.Y. 1964) (noting that "[w]hether or not defendant's acts constituted an infringement is firmly linked to the question of defendant's rights under the agreement").  *See also*, *Phillips Petroleum Co. v. U.S. Steel Corp.*, 566 F. Supp. 1093, 1097 (D.C. Del. 1983). Logically, the converse is also true, and Motorola's infringement claims are likewise compulsory counterclaims to the Washington contract claims.

Resolution of the claims in the Washington action and the Wisconsin actions require, at least in substantial part, assessing some of the same facts and legal theories.  Rule 13(a) declares such claims to be compulsory counterclaims to prevent a multiplicity of suits and the risk of inconsistent results.

   **B.      Motorola's Compulsory Counterclaims Should Therefore Be Dismissed, or Alternatively, Stayed.**

Because Motorola's claims are compulsory counterclaims in the Washington action, the proper course here is to dismiss this case or, at a minimum, to stay it pending resolution of the Washington case.  *Wilde*, 2007 WL 2053458 at *6.  *See also*, 6 Fed. Prac. & Proc. Civ. §1418 (3d. ed.).  "There is a rebuttable presumption that the first case filed should proceed and the second case be abated."  *Inforizons, Inc. v. VED Software Services, Inc.*, 204 F.R.D. 116, 120 (N.D. Ill. 2001).  "In general, where a claim pending before a court is most properly brought as a compulsory counterclaim in an earlier-filed suit in another court, the recommended course is for the court in which the compulsory counterclaim is pending to stay proceedings or to dismiss the

counterclaim with leave to refile it in the earlier-filed suit." *Avante*, 2009 WL 2431993 (S. D. Ill. 2009).

As the first filed case, Microsoft's Washington action should proceed.  Motorola and General Instrument "bear[] the burden of showing a compelling circumstance or imbalance of convenience to overcome the presumption that the second filed case should be dismissed in favor of the first-filed case." *Inforizons*, 204 F.R.D. at 120.  Moreover, dismissal is favored "when it is absolutely clear that dismissal will not adversely affect a litigant's interests." *Wilde*, 2007 WL 2053458 at *6, *citing Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.,* 203 F.3d 442, 444 (7th Cir. 2000).

Here, there are no compelling circumstances or any imbalance of convenience that overcomes the presumption that the Wisconsin actions should be dismissed.  Dismissal would not adversely affect plaintiffs' interests because Motorola and General Instrument could bring their patent infringement allegations as counterclaims in the Washington Action – indeed, those counterclaims are compulsory.  And given recently-filed nature of both actions, there are no procedural barriers to Motorola pursuing such counterclaims in the Washington action.

Alternatively, if the Court has any concern that plaintiffs' claims cannot be completely litigated in the Washington action, it should stay the Wisconsin cases pending resolution of the Washington action.  *See Inforizons*, 204 F.R.D. at 120.

### III.   If the Wisconsin Actions Are Not Dismissed or Stayed, the Court Should Transfer the Actions Pursuant to 28 U.S.C. § 1404.

Even if Motorola's patent infringement claims were not compulsory counterclaims to the Washington Action, the Wisconsin Action should be transferred to the Western District of Washington pursuant to 28 U.S. C. § 1404.  Section 1404(a) allows a district court to transfer if (1) venue is proper in the transferor district, (2) the transferee court is in a district where the

action may have originally been brought, and (3) the transfer is in the interests of justice.  28 U.S.C. 1404(a).  *See also*, *Coffey v. Van Dorn. Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The Wisconsin action satisfies all three of these factors, because Microsoft does not dispute that venue is proper in this district, the Plaintiffs' current action could have been brought against Microsoft in the Western District of Washington, and the interests of justice would be served best by a single court resolving the intertwined issues explained above.

In analyzing the interests of justice prong of § 1404, courts consider a number of factors in deciding whether to transfer venue:  (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the convenience of the parties; (4) the convenience of non-party witnesses; (5) the court's power to compel the appearance of unwilling witnesses and the costs of obtaining attendance of witnesses; (6) the location of physical evidence; (7) the relative familiarity of the courts with applicable law; (8) the relationship between the forum community and the subject of the litigation; (9) the congestion of the respective court dockets; and (10) whether transfer would facilitate the consolidation of cases.  *Baymont Franchising, LLC v. Heartland Properties, LLC*, No. 05-C-0606, 2005 WL 2922225, *2 (E.D. Wis. Nov. 3, 2005), *citing*, *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).  *See also*, *Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1176-77 (W.D. Wis. 2007); *Connexus Credit Union v. Connex Credit Union*, 219 F.R.D. 465, 467 (W.D. Wis. 2003).  As explained below, the balance of these factors clearly weighs in favor of transfer to the Western District of Washington where the related Washington action is already pending.  Microsoft therefore asks the Court to transfer the Wisconsin actions to the Western District of Washington.

A. **Because the Western District of Wisconsin Is Not Plaintiffs' Home Forum, Their Choice of Forum Receives No Special Deference.**

In any venue transfer analysis, the plaintiff's choice of forum receives little weight where the chosen forum lacks any significant connection to the claims at issue. *Chicago Rock Island and Pacific R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *Encyclopaedia Britannica*, 512 F. Supp. 2d. at 1176 (plaintiff's choice of forum receives "no special deference" where the chosen forum is not plaintiff's home forum).

The Western District of Wisconsin has no significant connection to plaintiffs' claims. Motorola is a Delaware corporation with its principal place of business in Libertyville, Illinois and has no particular relationship to this district. Similarly, General Instrument is also a Delaware corporation, with its principal place of business in Horsham, Pennsylvania. Motorola and General Instrument have not identified any activity or witnesses in the Western District of Wisconsin, nor is Microsoft aware of any such activity or witnesses. Additionally, none of the named inventors of the patents-in-suit are from Wisconsin, further illustrating a lack of connection to the Wisconsin forum. As a result, this factor does not weigh against transfer.

B. **The Western District of Washington Is the Situs of the Material Events at Issue.**

This case involves accused activities in the Western District of Washington where Microsoft is headquartered and operates. Microsoft has tens of thousands of employees in the Redmond, Washington area, within the Western District of Washington. *See Technical Concepts L.P. v. Zurn Indus., Inc.*, No. 02 CV 5150, 2002 WL 31433408, at *3 (N.D. Ill. Oct. 31, 2002) (holding that the location of the alleged infringer's "princip[al] place of business is often the critical and controlling consideration" because patent infringement suits "often focus on the activities of the alleged infringer, its employees, and its documents" (internal citations omitted)). The accused Microsoft Windows 7 product was designed in the Redmond area. Andersen Decl.,

9

¶ 7.  Motorola's infringement contentions are at such a vague level, however, that it is not possible at this stage to identify specific individuals or entities responsible for the operations that Motorola alleges to be infringing.  In any event, Microsoft's development and management teams responsible for the Windows 7 product are based in the Redmond area in the Western District of Washington, and it is highly likely that the relevant witnesses would be found on those teams.  Andersen Decl.,¶ 7.  Similarly, witnesses with knowledge of sales, marketing, and finance with respect to the accused product reside in the Western District of Washington. Andersen Decl., ¶¶8-9.

Conversely, the Western District of Wisconsin has no relationship to the facts at issue, and tellingly, Motorola alleges venue solely based on the fact that Microsoft's products are sold within the district.  Complaint, d/e 1 at 3.  That fact makes this district no more unique than any other Federal judicial district, as Windows 7 and products employing it are sold nationwide.  But, Microsoft has no relevant operations or employees in this district.  *See generally,* Andersen Decl..  And as explained in the last section, plaintiffs have no established relationship to this district.  This factor weighs strongly in favor of transfer.

### C.    The Western District of Washington Is a More Convenient Location for the Parties.

As explained above, neither Motorola, nor General Instrument, nor Microsoft is located in the Western District of Wisconsin.  All Microsoft's company witnesses and representatives are located within the Western District of Washington, and no Microsoft witnesses, company or third-party, are located in Wisconsin.  Andersen Decl., ¶¶ 9-12.  Microsoft is aware of no Motorola or General Instruments witnesses in the Western District of Wisconsin.  Moreover, based on Patent Office records, none of the inventors appear to be from Wisconsin but are instead located in San Diego, California.

Venue in the Western District of Wisconsin would require all three parties to travel for court hearings and trial. Admittedly¸ the Western District of Wisconsin courthouse in Madison is geographically closer to Motorola's headquarters in Illinois than the Western District of Washington court.[4] Motorola's Illinois facilities, on the other hand, are close to O'Hare airport and would allow its corporate headquarters witnesses easy and direct access to the Western District of Washington.[5] O'Hare is one of the largest airports in the United States and on any given day has dozens of flights departing to and arriving from the Seattle airport.[6] General Instruments is located in Pennsylvania, so although the Western District of Wisconsin is physically closer, it is likely no easier for travel. On the other hand, the Western District of Wisconsin is a substantially more inconvenient location for potential Microsoft witnesses. The Dane County Airport in Madison does not have flights directly to the west coast.[7] Microsoft's witnesses would have to fly into Chicago's O'Hare airport and then drive three additional hours to Madison.[8]

---

[4] , Motorola's Libertyville headquarters is about a two-hour drive from the courthouse in Madison with driving time calculated by Bing.com/maps by entering in Motorola's Libertyville headquarters (600 North US Hwy 45, Libertyville IL) as a starting point, and the Western District of Wisconsin's courthouse (120 North Henry Street, Madison, WI) as an end point.

[5] Driving time calculated by Bing.com/maps by entering in Motorola's Libertyville headquarters (600 North US Hwy 45, Libertyville IL) as a starting point, and O'Hare Airport as an end point.

[6] The flight time between O'Hare and Seattle is approximately four hours. Daily arrival/departure information for O'Hare available at http://www.flychicago.com/PassengerInformation/FlightInformation/Default.aspx.

[7] Dane County Airport flight hub information available at: http://www.msnairport.com/planning/where.aspx.

[8] The Milwaukee airport is somewhat closer to Madison than O'Hare Airport (1 hour and 20 minutes, as calculated by Bing.com/maps entering General Mitchell Airport as the starting point and 120 North Henry Street, Madison, WI as an end point). However, in the month of November, 2010 General Mitchell airport had only 5 flights entering/leaving from/to the Seattle Airport¸ making it unlikely that Microsoft witnesses could fly directly into Milwaukee from Seattle. *See General Mitchell Monthly Data Report,* available at http://www.mitchellairport.com/facts.html. Alternately, regional connecting flights are available between O'Hare and Madison.

The relatively small increase in travel time for Motorola's headquarters witnesses does not outweigh the clear convenience to Microsoft witnesses (with General Instrument's witnesses being neutral) that would result from trying this case in the Western District of Washington. *See, e.g. Heckler & Koch, Inc. v. Precision Airsoft, LLC*, 1:09-cv-485-SEB-JMS, 2010 WL 1257450 *2 (S.D.Ind. Mar. 25, 2010) (holding that with modern transportation and the relatively small increase in travel time involved in transporting witnesses from Georgia and Virginia to Washington State instead of Indianapolis did not outweigh the "clear convenience that would be gained by Defendant if this case were litigated in Washington State").

As a result, the balance of the convenience to the parties weighs in favor of transfer. *See International Truck and Engine Corp. v. Dow-Hammond Trucks Co.*, 221 F. Supp. 2d 898, 905 (N.D. Ill. 2002) (holding that where the conduct giving rise to the dispute took place in California, convenience to the parties weighed in favor of transfer to California, where the defendant was located).

**D.     The Western District of Washington Is a More Convenient Location for Non-Party Witnesses.**

Neither party has identified any third-party witnesses from Wisconsin.  In fact, the inventors for the patents-in-suit are all from California.  If any of these inventors are called as witnesses, Washington would clearly be a much closer and geographically more convenient location for these witnesses.  This factor weighs in favor of transfer.

**E.     The Western District of Washington Provides Compulsory Process to Compel the Attendance of Unwilling Witnesses.**

Transferring the case to the Western District of Washington does not adversely affect the availability of compulsory process to compel the attendance of unwilling witnesses.  Microsoft is not aware of any potential witnesses who would be subject to compulsory process in Wisconsin.  Thus, this factor is neutral in the transfer analysis.

**F.     The Western District of Washington Provides Easier Access to Physical Evidence.**

The Western District of Washington provides easier access to documentary evidence because Microsoft is located there, material events occurred there, and material witnesses reside there.  *See*, *In re Genentech, Inc.*, 566 F.3d 1338, 1343-45 (Fed. Cir. 2009) (holding that in patent infringement cases "the bulk of the relevant evidence" is often from the defendant, and therefore "the place where the defendant's documents are kept weighs in favor of transfer to that location").  Much of the documentary evidence related to the accused products is located at Microsoft's facilities in Redmond, Washington.  Andersen Decl., ¶ 6.  Conversely, Microsoft is not aware of any documentary proof in the Western District of Wisconsin.  Accordingly, this factor weighs in favor of transfer.

**G.     The District Court in the Western District of Washington Is Familiar With Applicable Law.**

Plaintiffs accuse Microsoft of patent infringement, which raises issues of federal patent law and which both federal district courts are equally competent to address.  *Brunswick Bowling v. Qubica USA, Inc.*, No. 05-c-3603, 2005 WL 2367764 *5 (N.D.Ill. Sep. 26, 2005) (Patent infringement cases involve questions of federal law, district courts are "equally competent to decide such matters").  Indeed, the accused Windows 7 product is available in every judicial district nationwide.  This factor is neutral in the § 1404 transfer analysis.

**H.     The Western District of Washington Has a Closer Relationship to This Suit Than the Western District of Wisconsin.**

The Western District of Washington has a real and substantial interest in resolving Motorola's claims that Microsoft has infringed the patents-in-suit.  Microsoft is a large and prominent employer in the Puget Sound (Seattle area) region.  Andersen Decl., ¶ 3.  Residents of the Western District of Washington area have a strong interest in resolving disputes over

Microsoft's ability to develop and distribute its products. *See Hoffman-La Roche*, 587 F.3d at 1336. Correspondingly, Motorola affirmatively sought out Microsoft in Washington in its licensing demands that form the basis of the Washington action, and Microsoft's Washington action seeks to limit any damages that Motorola might ever be awarded based on Windows 7's H.264 implementations. Conversely, the Western District of Wisconsin has minimal interest in this case, while Washington has substantial interest in policing conduct directed at its residents.

Furthermore, the Federal Circuit has recently decided a number of mandamus cases where it has instructed courts to transfer patent cases where, as here, there is "no meaningful connection between the venue and the case." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2009) (entering writ of mandamus ordering the lower court to transfer case on the grounds that the lower court had given too much weight to plaintiff's choice of forum, ignored precedent in assessing cost of attendance for witnesses, disregarded evidence that witnesses would need to travel hundreds of miles to attend trial, failed to consider that access to sources of proof would be easier in the transferee district, and disregarded precedent in analyzing the public interest in having localized interests decided in the home forum). *See also*, *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Microsoft Corp.*, Docket No. 944 (Fed. Cir. Nov. 8, 2010), available at http://www.cafc.uscourts.gov/images/stories/opinions-orders/2010-m944.11-8-10.1.pdf.

This factor weighs in favor of transfer.

I.     **The Western District of Washington is Not Substantially Slower to Trial Than the Western District of Wisconsin.**

The relative congestion between the two districts is a neutral factor.[9]  Indeed, as explained above, any final resolution of the infringement action here must await the determination in Washington as to what, if any, limits there may be on Motorola's ability to recover damages.  In addition, Microsoft understands that Motorola has licensed the patents in suit.  That Motorola has accepted license fees for using the patent technology indicates that it could be fully compensated by a reasonable royalty, thus making a swift trial a less critical factor.  *Matsushita Elec. Industrial Co. v. Siliconix Inc.*, No. 05-C-732-S, 2006 WL 517628, *5 (W.D. Wis. Mar. 2, 2006); *Encyclopaedia Britannica*, 512 F. Supp. 2d at 1176.

J.     **Transfer Would Facilitate Consolidation of Related Cases.**

As explained *supra*, Motorola's patent infringement claims are compulsory counterclaims to, or at the very least are very closely related to, the claims in the Washington Action, such that they should be transferred to the Western District of Washington so that they can be consolidated with the Washington action.  Transferring this case to Washington would avoid duplicative litigation and the possibility of inconsistent rulings.  *Baymont Franchising*, 2005 WL 2922225 at *3, *citing*, *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624 (7th Cir. 1995). This factor weighs heavily in favor of transfer.

IV.    **CONCLUSION**

Plaintiffs' patent infringement claims are compulsory counterclaims to Microsoft's breach of contract, promissory estoppel, and waiver claims already pending in the Western District of Washington.  As a result, this Court should dismiss plaintiffs' claims or in the

---

[9] The median time from filing to disposition in the Western District of Wisconsin is 5.3 months, and the median time from filing to trial is 15 months. (W.D. Wisconsin and W.D. Washington judicial caseload profiles, available at: www.uscourts.gov/cgi-bin/cmsd2009.pl)  In the Western District of Washington, the median time from filing to disposition is 6.7 months and the median time from filing to trial is 19 months.

alternative, stay them.  Alternately, even if plaintiffs' claims were not compulsory counterclaims

to the claims in the Washington action, plaintiffs' actions should still be transferred to the

Western District of Washington because the relevant factors under 28 U.S.C. § 1404 clearly

weigh in favor of transfer.

Dated this 20th day of December, 2010.

MICHAEL BEST & FRIEDRICH, LLP

By:   s/J. Donald Best
            J. Donald Best, SBN 1012450
            Christopher C. Davis, SBN 1064764
            P. O. Box 1806
            Madison, WI  53701-1806
            Tel:        (608) 257-3501
            Fax:       (608) 283-2275
            Email:     jdbest@michaelbest.com
                           ccdavis@michaelbest.com

            Charles J. Crueger, SBN 1029825
            100 East Wisconsin Avenue, Suite 3300
            Milwaukee, WI  53202
            Tel:        (414) 271-6560
            Fax:       (414) 277-0656
            Email:     cjcrueger@michaelbest.com

            *Attorneys for Defendant*
            *Microsoft Corporation*

Of Counsel:

David T. Pritikin
*dpritikin@sidley.com*
Richard A. Cederoth
*rcederoth@sidley.com*
Douglas I. Lewis
*dilewis@sidley.com*
John W. McBride
*jmcbri01@sidley.com*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000

T. Andrew Culbert
*andycu@microsoft.com*
David E. Killough
*davkill@microsoft.com*
**MICROSOFT CORPORATION**
1 Microsoft Way
Redmond, Washington 98052
Telephone:     425-703-8865
Facsimile:     425-869-1327

<u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on the 20th day of December, 2010, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

 s/ J. Donald Best                 

[Name]
